UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES T. JOHNSON d/b/a STOCKTON ROOFING & SIDING,

      Plaintiff,

v.

ATLANTIC CASUALTY INSURANCE COMPANY,

      Defendant.

_____

ATLANTIC CASUALTY INSURANCE COMPANY,

  Defendant/Third Party Plaintiff

v.

MARC P. HERRING and A BEST, INC.,

  Third Party Defendants.

**DECISION AND ORDER**
13-CV-1002S

## I. INTRODUCTION

Presently before this Court is the summary judgment motion of Defendant/Third-Party Plaintiff Atlantic Casualty Insurance Company ("Atlantic"). Atlantic issued a commercial general liability insurance policy to Plaintiff James T. Johnson d/b/a Stockton Roofing & Siding ("Stockton Roofing") in early 2011. (Atlantic's Stmt Facts ¶ 6, Docket No. 32-2; Am Compl Ex B (Policy), Docket Nos. 29-2, 29-3.) The present insurance coverage litigation stems from an August 2011 accident wherein a Stockton Roofing employee, Third-Party Defendant Marc P. Herring, was injured falling off a

1

ladder during the course of his employment. (Atlantic's Stmt Facts[1] ¶¶ 4-5.) At that time, Stockton Roofing had been subcontracted by Third-Party Defendant A Best, Inc. ("Best") to perform roofing work. (Id. ¶ 2, 12.) The relevant contract between these two contractors included an indemnification clause, as well as a provision requiring Stockton Roofing to name Best as an additional insured on a primary basis. (Id. ¶ 15; Corral Aff Ex A, Docket No. 36-2)

As a result of his fall, Herring commenced an action in New York state court against Best for damages from personal injuries sustained during the accident. (Atlantic's Stmt Facts ¶¶ 8-11, 13.) Best's insurance carrier notified Stockton Roofing in March 2012 of the lawsuit and requested that, pursuant to the terms of their contract, Stockton Roofing defend and indemnify Best in that litigation. (Corral Aff ¶ 4 Ex A.) In a letter to Stockton dated April 17, 2012, American Claims Service, Atlantic's third-party administrator, declined coverage on behalf of Atlantic. (Corral Aff ¶ 5 Ex B.)

In October 2012, Best filed a third-party complaint against Stockton Roofing as part of the Herring state court action, in which Best asserted that Stockton had a contractual obligation to defend and indemnify Best in Herring's lawsuit. (Atlantic's Stmt Facts ¶¶ 14-16.) Best also asserted a claim against Stockton Roofing for breach of contract based on Stockton's failure to obtain insurance. (Id. ¶ 17.) Stockton Roofing sent copies in November 2012 of the relevant pleadings in this third-party state court action to "Keller Group Inc. c/o H.R. Keller and Company." (Atlantic's Stmt Facts ¶ 18.) American Claims Services thereafter informed Stockton Roofing that Atlantic was denying coverage by letter dated December 21, 2012. (Id. ¶¶ 20-23.)

---

[1] Unless otherwise stated, the facts cited from Atlantic's Statement of Undisputed Facts (Docket No. 32-2) are unopposed.

In July 2013, Stockton Roofing commenced the instant action in New York State Supreme Court, Niagara County,[2] seeking a declaration that Atlantic's denial of coverage for the Herring/Best action was improper and that Atlantic was obligated to provide insurance coverage on behalf of Stockton. (Id. ¶ 24; see Compl., Docket No. 32-4.) Atlantic then removed the matter to this Court based on diversity and, in December 2013, commenced a third-party action against Herring and Best. (Docket Nos. 1, 8.) As stated in Atlantic's Amended Third-Party Complaint, Atlantic seeks a declaration that it has no obligation to defend or indemnify Stockton Roofing or any other entity in the Herring/Best state court action. (Docket No. 29.)

## II. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

---

[2] The state court complaint submitted in support of the removal notice is incomplete. A complete version of Plaintiff's state court complaint appears at Docket No. 32-4.

reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Here, Atlantic contends that it is entitled to summary judgment because: (1) Stockton Roofing's insurance policy expressly excludes coverage for bodily injuries sustained by employees during the course of their employment; and (2) Best is not insured under Stockton Roofing's policy. (Atlantic Mem of Law at 10-18, Docket No. 32-1.) In opposition, both Stockton Roofing and Best argue that the policy provides coverage for liability resulting from "an insured contract" such as the indemnification agreement between Stockton Roofing and Best. (Best Mem of Law at 2-5, Docket No. 36-4; Privateer Decl ¶¶ 16-20, Docket No. 40.) Best and Herring further argue that Atlantic's failure to provide Best proper notification of the disclaimer rendered the denial of coverage based on a policy exclusion invalid. (Best Mem of Law at 5-9; Herring Mem of Law at 4, Docket No. 35.) Finally, Herring argues that the insurance policy is ambiguous with respect to the policy exclusion, and therefore must be interpreted as providing coverage. (Herring Mem of Law at 4.)

**A.     Coverage for an "Insured Contract"**

Atlantic argues that it had no obligation to provide coverage to any party because the allegations in Herring's complaint, as well as those asserted in Best's related third-party complaint against Stockton Roofing, fall entirely within the Policy's exclusion of coverage for employee injuries. "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 652, 609 N.E.2d 506

4

(1993).[3] Further, "exclusions are subject to strict construction and must be read narrowly." Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 850 N.E.2d 1152 (2006).

Here, the Commercial General Liability Policy (the "Policy") issued by Atlantic to Stockton Roofing provides, in Section I under "Coverage A," the following relevant exclusions to coverage for bodily injuries and property damage:

> **b.** **Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> . . .
>
> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .
>
> . . .
>
> **e.** **Employer's Liability**
>
> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> (a) Employment by the insured; or
>
> (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above;

---

[3] In diversity cases, federal courts will generally apply the substantive law of the forum state; here, the parties agree New York law applies. See Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and
>
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> <u>This exclusion does not apply to liability assumed by the insured under an "insured contract".</u>

(Docket No. 29-2 at 17 (emphasis added).) An "insured contract," as defined by the Policy, includes any "part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (Docket No. 29-3 at 6.)

Stockton Roofing and Best argue that the indemnification agreement between these parties qualifies as an "insured contract," therefore coverage was available under the Policy. (Privateer Decl ¶¶ 16-20; Best Mem in Opp'n at 2-5.) As Atlantic notes, however, the Policy also includes an endorsement which modifies the Employer's Liability exclusion (subsection 'e,' quoted above) by expanding its scope to further exclude coverage for bodily injuries sustained by any " 'contractor' for which any insured may become liable in any capacity." (Docket No. 29-3 at 18.) The modifying endorsement also removes the exception to the exclusion for liability assumed under an insured contract, which is replaced with the following language:

> This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.
>
> <u>This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract</u>.

6

(Id. (emphasis added).) Accordingly, as Atlantic argues, the Policy unambiguously excludes from coverage liability for bodily injuries to an employee such as Herring.

Further, an ambiguity is not created by the fact that the "Contractual Liability" exclusion (subsection 'b,' quoted above) was not similarly modified. (See Best Mem in Opp'n at (relying solely on subsection 'b').) Initially, Atlantic is correct that " '[e]xclusions in policies of insurance must be read *seriatim*, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another.' " 385 Third Ave. Assocs. v. Metropolitan Metals Corp., 81 A.D.3d 475, 476, 916 N.Y.S.2d 95 (N.Y.A.D. 1st Dep't 2011) (quoting Monteleone v. Crow Constr. Co., 242 A.D.2d 135, 140-41, 673 N.Y.S.2d 408 (N.Y.A.D. 1st Dep't 1998), *lv denied*, 92 N.Y.2d 818 (1998)), *lv denied*, 17 N.Y.3d 702 (2011); (Atlantic Reply Mem at 15-16). Further, the two exclusion provisions are not inconsistent: whereas the "contractual liability" provision generally permits liability assumed under an "insured" contract, the following employer's liability provision excludes only a specific subset of that general coverage. Accordingly, Atlantic has met its burden of establishing that the Policy unambiguously precludes coverage for bodily injuries to Stockton Roofing employees even where, as here, that liability arises indirectly as a result of an indemnification agreement. See Monteleone, 242 A.D.2d at 140.

**B.     Timeliness of Notice and Disclaimer**

Best argues that, because there is evidence that Stockton Roofing "intended to have Best covered under the Policy," Atlantic was required to notify Best directly of the insurer's disclaimer of coverage, and Atlantic's failure to timely do so precludes the insurer's reliance on exclusions. (Best Mem in Opp'n at 6-8.) Specifically, Best argues

7

that a March 29, 2012 letter sent by its insurance agent to Stockton Roofing requesting that Stockton defend and indemnify Best in accordance with the terms of their agreement constituted sufficient notice to Atlantic of Best's claim. (Id. at 5; see Herring Mem in Opp'n at 4 (similarly relying on the March 29, 2012 letter to Stockton Roofing).) Accordingly, Best argues that Atlantic was obligated under New York Insurance Law § 3420(d), but failed, to notify Best directly of the disclaimer.

Initially, Best concedes in its argument that it never notified Atlantic directly of its claim as the beneficiary of an indemnification agreement, only Stockton. As such, Atlantic relies on Webster ex rel. Webster v. Mount Vernon Fire Ins. Co., which recognized that " 'notice provided by one insured in accordance with the policy terms will not be imputed to another insured.' " 368 F.3d 209, 215 (2d Cir. 2004) (quoting Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 44, 752 N.Y.S.2d 286, 289-90 (1st Dep't 2002)). The underlying rationale for this is that "an insurer can hardly be said to have sufficient facts to issue a disclaimer before the insured has provided notice, because the insurer has no reason to anticipate that an insured will seek coverage until it is actually so notified." Webster, 368 F3d at 216.

The holding in Webster, however, was based on policy language explicitly stating that "*each* insured has a duty to comply with the policy's notice requirements, regardless of whether the insured is the primary or secondary insured." Id. at 214-15 (emphasis in original). In certain situations where such explicit language is absent, however, notice by one insured may be deemed to sufficient to notify an insurer of the claims of additional parties which are either united in interest with the insured or where there is no adversity between those parties. City of New York v. Lexington Ins. Co., 735 F.Supp.2d

99, 111-12 (S.D.N.Y. 2010); see 23-08-18 Jackson Realty Associates v. Nationwide Mut. Ins. Co., 53 A.D.3d 541, 543, 863 N.Y.S.2d 35, 37 (N.Y.A.D. 2 Dep't 2008). Here, not only does the Policy not use the express notification language, but, as Best argues, it expressly provides that "written notice by or on behalf of the injured person *or any other claimant*, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us." (Docket No. 29-2 at 14 (emphasis added).)

Nonetheless, this Court rejects Best's argument that Atlantic is now barred from disclaiming coverage due to the insurer's failure to notify Best directly of its intent to disclaim in accordance with New York Insurance Law § 3420(d)(2). (Best Mem of Law at 5-9.) "By its plain terms, section 3420(d)(2) applies only in a particular context: insurance cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy." KeySpan Gas East Corp. v. Munich Reinsurance America, Inc., 23 N.Y.3d 583, 590, 15 N.E.3d 1194 (2014). Best, however, is seeking coverage for contractual indemnification. As such, section 3420(d) is not applicable and Atlantic is "not barred from disclaiming coverage simply as a result of the passage of time." KeySpan Gas East Corp., 23 N.Y.3d at 590-91 (internal quotation marks omitted); Preserver Ins. Co. v. Ryba, 10 N.Y.3d 635, 642, 893 N.E.2d 97 (2008) (finding § 3420(d) did not apply to general contractor's claims against subcontractor for indemnification and breach of contract, even where indemnification was sought for a personal injury suit by the subcontractor's employee against the general contractor).

## III. CONCLUSION

For the reasons stated above, this Court finds that Atlantic is entitled to summary judgment in the action against it by Plaintiff Stockton Roofing, as well as in the third-party action it commenced against Defendants Best and Herring. Specifically, Atlantic is entitled to a declaration[4] that it not obligated to defend or indemnify Stockton Roofing, Best, or any other person or entity in connection with the personal injury action in New York State Supreme Court, Niagara County, denominated as <u>Marc P.Herring v. A Best, Inc.,</u> Index No. 145727.

## IV. ORDERS

IT HEREBY IS ORDERED that Defendant/Third Party Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment (Docket No. 32) is GRANTED as stated above;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: August 23, 2015
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge

---

4 Although referenced in its prayer for relief, Atlantic never sets out under what theory it is purportedly entitled to attorneys' fees and costs in this case. This Court will therefore not consider this issue.